UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| MELISSA DARLENE SILVER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 3:08-CV-511 |
| ) | (VARLAN/GUYTON) |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding the disposition by the District Court of the plaintiff's Motion For Summary Judgment [Doc. 11], and the defendant's Motion For Summary Judgment. [Doc. 15]. Plaintiff Melissa D. Silver seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the defendant Commissioner.

## BACKGROUND

Plaintiff was 36 years of age when the ALJ issued the Decision (Tr. 17, 18). She has a 9th grade education, with work experience as a packing and shipping clerk, telephone receptionist, and convenience store cashier (Tr. 31-32, 47). She alleges that she has been disabled since August 1, 2005, due to numbness in legs and hands, back pain, fatigue, COPD, depression and obesity (Tr. 155, 199-202).

## MEDICAL RECORD EVIDENCE

The relevant medical record evidence has been summarized accurately by the defendant [Doc. 16], as follows:

In February, 2005, plaintiff reported smoking a pack of cigarettes per day (Tr. 182).

Dr. Saurabh Desai examined plaintiff for the Georgia state agency and prepared a report in October, 2005 (Tr. 193-202). Plaintiff stated to Dr. Desai that she had shortness of breath, coughing, pedal edema, spine problems, arthritis, loss of sensation, and depression (Tr. 200). Plaintiff stated that she had never been evaluated for back pain (Tr. 199). Upon examination, plaintiff had decreased breath sounds with scattered rhonchi (snoring sounds) and rales (crackles) and soft wheezing in both lungs (Tr. 201). Plaintiff coughed when inhaling deeply (Tr. 201). In addition, plaintiff was morbidly obese, had tenderness over her lower back, a positive straight leg raising test bilaterally, and some neck discomfort (Tr. 202). Plaintiff also had a decreased range of motion in both shoulders and knees, which Dr. Desai opined was possibly due to mild osteoarthritis and obesity (Tr. 202). Plaintiff had slightly decreased sensation and reduced deep tendon reflexes in her legs (Tr. 202). Plaintiff also had a flat affect and a depressed and sad mood (Tr. 202). Her memory, concentration, and attention span were normal (Tr. 202). Dr. Desai opined that plaintiff would have difficulty performing actions with her arms due to obesity and lower back pain and that she walked very slowly (Tr. 194).

In January, 2006, Dr. Legh Scott reviewed plaintiff's records on behalf of the state and rendered an assessment of plaintiff's physical limitations, in which he opined that plaintiff could: occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; sit, stand, and walk

2

for six hours in an eight-hour workday; and could push and pull with her arms and legs to the extent she could lift and carry (Tr. 215). Dr. Scott opined that plaintiff could: frequently balance; occasionally climb stairs and ramps, stoop, kneel, crouch, and crawl; never climb ladders, ropes, and scaffolds; and should avoid concentrated exposure to respiratory irritants (Tr. 216, 218).

Allen Carter, Ph.D. reviewed plaintiff's records on behalf of the state DDS and prepared an assessment of her mental limitations in January, 2006. Dr. Carter opined that plaintiff had an affective disorder, but that it was not a severe impairment (Tr. 223, 235).

Plaintiff was admitted to Morristown Hamblen Hospital on April 24, 2006, complaining of abdominal pain with a dull ache and fever (Tr. 260-261). Doctors examined plaintiff numerous times and ordered CT scans, but were unable to provide a definitive diagnosis (Tr. 274-277). Plaintiff was transferred to University of Tennessee Memorial Hospital on May 8, 2006, for further testing (Tr. 276-277). A surgeon noted that day that plaintiff had an intra-abdominal abscess and questionable diverticulitis (inflammation of a portion of the intestinal tract) (Tr. 248). Plaintiff was found to be severely obese, four feet, eleven inches and 311 pounds. A doctor drained plaintiff's intra-abdominal abscess and she was discharged on May 12, 2006 (Tr. 244-245, 253-254).

Plaintiff presented to Dr. Hina Kouser nine times between May and November, 2006, for management of her chronic conditions, including depression, chronic obstructive pulmonary disease (COPD), hypothyroidism, anemia, back and leg pain, and elevated cholesterol (Tr. 315-332). Dr. Kouser managed plaintiff's medications (Tr. 315-332). Although plaintiff was frequently noted to be short of breath, she often displayed normal gait, station, and respiratory function (Tr. 318, 320, 322, 326, 328, 330, 332).

In 2006, plaintiff complained to Dr. Kouser of feet swelling and requested referral to a "back doctor" (Tr. 323). Upon examination, Dr. Kouser noted that plaintiff had decreased air entry, prescribed medication, and ordered an x-ray and MRI of plaintiff's lumbar spine (Tr. 324). The x-ray revealed mild scoliosis, but was otherwise normal (Tr. 339). The MRI showed mild degenerative spondylosis (osteoarthritis) and a mild disc bulge at L5-S1 with no nerve root impingement, disc herniation, or central canal stenosis at any level (Tr. 340).

Plaintiff reported in August, 2006, that her depression was improved with medication, but that she still had leg and foot pain (Tr. 325). Dr. Kouser referred plaintiff for a sleep study approximately two weeks later (Tr. 341-350). The sleep study demonstrated that plaintiff had severe sleep-disordered breathing with significant snoring and periodic limb movement interrupting her sleep (Tr. 342). The examining doctor noted that a continuous positive airway pressure (CPAP) machine (a device for applying increased airway pressure) controlled plaintiff's sleep apnea and periodic limb movements and recommended that plaintiff lose weight and use a CPAP machine (Tr. 342). In October, 2006, plaintiff stated that she was sleeping better with a CPAP machine and Dr. Kouser noted that her depression had "improved a lot" (Tr. 329). Plaintiff reported a month later that her mood was much improved (Tr. 331).

In October, 2006, plaintiff presented to Dr. Julie Jacques, D.O., with complaints of lower back pain which radiated down to her legs and was worse with prolonged sitting or standing (Tr. 308). Plaintiff also complained of hand numbness, especially when driving (Tr. 308). Upon examination, plaintiff's lungs were clear and she displayed no back tenderness (Tr. 308). Plaintiff had normal motor strength and range of motion, with a normal straight leg raising test (Tr. 309). She

4

had decreased reflexes and a markedly decreased vibration sense in her ankles and knees, but her light touch and pinprick responses were normal (Tr. 309). Plaintiff had an entirely normal gait and could walk on her heels and toes (Tr. 309). Dr. Jacques ordered an electrodiagnostic study which revealed possible radiculopathy (nerve root disease) at C6 or C7, but was normal with respect to plaintiff's legs (Tr. 307, 309). A chest x-ray in February, 2007, was normal (Tr. 450).

Dr. Wayne Page examined plaintiff on March 6, 2007, and created a report for the state agency (Tr. 363-375). Plaintiff stated to Dr. Page that she had experienced back pain for the last six or seven years which did not radiate to other parts of her body (Tr. 370). Plaintiff claimed that she could walk for a quarter of a mile and could carry 20 pounds for 20 feet without difficulty (Tr. 370). Plaintiff also reported that she had experienced leg numbness for the past year to a year-and-a-half and was on medication with good results (Tr. 370). Additionally, plaintiff reported shortness of breath and sleep apnea which was treated with a CPAP machine with good results (Tr. 370-371). She stated that she had smoked one pack of cigarettes a day for the last 19 years (Tr. 370). Plaintiff stated that she experienced depression her entire life and that she was on medication, which helped (Tr. 371).

Upon examination, Dr. Page opined that plaintiff was uncooperative and unreliable based on an invalid grip strength tests for both hands (Tr. 372). Plaintiff's gait, posture, appearance, and station were normal (Tr. 372). Plaintiff weighed 300 pounds (Tr. 372). Plaintiff had no difficulty getting on and off of the exam table or rising from a chair (Tr. 372). Dr. Page observed that plaintiff could lift 20 pounds on a one-time basis with both hands while standing and could lift greater than 10 pounds with both hands while seated (Tr. 373). Plaintiff's back, extremities, and

5

musculoskeletal system were all normal (Tr. 373). A pulmonary function test reveled moderate restriction (Tr. 363-368, 373). Dr. Page opined that plaintiff had no functional limitations due to her obesity and had no impairment-related physical limitations (Tr. 373).

Social worker Alice Garland performed a mental consultative examination of plaintiff on March 20, 2007, and created a report (Tr. 377-381). Plaintiff stated that her family doctor currently prescribed medication for depression, and that it helped (Tr. 378). She reported that prior to taking medication she was depressed constantly, but with medication was only depressed "every now and then" (Tr. 380). Plaintiff stated to Ms. Garland that she did not drive very much because she had no car (Tr. 377). Plaintiff reported doing housework, including laundry and cooking, but did so at her own pace (Tr. 380). Upon examination, plaintiff miscalculated serial sevens and threes, but was able to calculate serial fives and correctly recalled a set of objects after a five-minute interval (Tr. 379). Plaintiff's thought process was organized, her insight and judgment were adequate, and her affect and mood were congruent and appropriate (Tr. 379). Ms. Garland opined that plaintiff had depression and a pain disorder (Tr. 381). Ms. Garland further opined that plaintiff may have moderate limitations in her ability to perform complex and detailed work, and a moderately limited ability to persist and concentrate (Tr. 381). Ms. Garland opined that plaintiff's ability to adapt and work with the public were no more than mildly limited (Tr. 381).

On April 10, 2007, Rebecca Joslin, Ed.D. reviewed plaintiff's records for the state agency and produced a report concerning her mental impairments in which Dr. Joslin opined that plaintiff had depression, which caused: a mild restriction on her activities of daily living; mild difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration,

6

persistence, or pace (Tr. 385, 392). Dr. Joslin further opined that plaintiff was able to: understand and remember simple and detailed instructions; maintain attention, concentration, persistence, and pace, with some difficulty; interact appropriately with others; and adapt to changes with some difficulty (Tr. 396-398).

Dr. James Moore also reviewed plaintiff's records for the state agency and produced a report dated April 19, 2007, in which he opined that plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently (Tr. 401). Dr. Moore also opined that plaintiff could stand, walk, and sit for six hours during an eight-hour workday and was able to push and pull to the degree she could lift and carry (Tr. 401). Dr. Moore opined that plaintiff had no other limitations other than that she could only occasionally climb ladders, ropes, and scaffolds, and should avoid concentrated exposure to respiratory irritants (Tr. 402, 404).

Plaintiff presented to Dr. Kouser 15 times between June and October, 2007, for several chronic conditions including depression, back pain, COPD, sleep apnea, and hypothyroidism (Tr. 416-445). During this time, Dr. Kouser managed plaintiff's medications (Tr. 416-445).

A CT scan of plaintiff's chest performed in June, 2007, was essentially normal with the exception of a small hiatal hernia and minimal spondylosis (Tr. 447). On November 15, 2007, plaintiff underwent a diagnostic hysteroscopy and dilation and curettage (procedure to remove tissue from the uterus) due to abnormal uterine bleeding (Tr. 454-455). The surgeon removed uterine tissue and several polyps, which were sent for testing (Tr. 454-455). Testing revealed endometrioid carcinoma (Tr. 456).

7

## MEDICAL EVIDENCE SUBMITTED TO THE APPEALS COUNCIL

An x-ray of plaintiff's chest on November 14, 2007, was normal (Tr. 480). On November 15, 2007, plaintiff underwent an incisional hernia repair (Tr. 475-476). During a follow-up appointment in December, 2007, a doctor recommended that plaintiff engage in light activity with no heavy lifting (Tr. 489). On January 17, 2008, Dr. Zain performed a total abdominal hysterectomy with bilateral salpingo-oophorectomy (removal of both uterine tubes and ovaries) (Tr. 461-463). Dr. Zain reported that he was unable to perform a pelvic lymph dissection, but that plaintiff "may very well be cured" by the procedure, although radiation would likely be offered at a later date (Tr. 468). Dr. Zain noted that Plaintiff was outside smoking prior to discharge on January 21, 2008 (Tr. 468).

## TESTIMONY EVIDENCE

At the hearing before the ALJ on December 14, 2007, plaintiff testified that she smoked a half-pack of cigarettes a day (Tr. 27). Plaintiff stated that she was currently five feet tall and 271 pounds, and that her doctors had told her to lose weight (Tr. 28-29). She testified that her hands and legs became numb, she experienced fatigue, her back constantly hurt, and she had difficulty breathing (Tr. 33-34). Plaintiff also stated that she experienced depression (Tr. 34). She testified that she had difficulty sleeping, but that she used a CPAP machine which sometimes helped (Tr. 45).

Plaintiff testified that she cleaned her house, but had to do so "a little at a time" (Tr. 33). She stated that she performed grocery shopping with a motorized cart (Tr. 43). Plaintiff

8

testified that she could walk for one-and-a-half blocks and stand for 15 minutes before her legs became numb (Tr. 43). She stated that she could only sit for 30 minutes due to leg numbness (Tr. 22).

The ALJ asked the vocational expert a hypothetical question regarding the existence of jobs for a person of plaintiff's age, education and past relevant work experience, who could perform simple, routine, and repetitive tasks and had the abilities and limitations described by Dr. Scott, specifically: ability to lift and carry twenty pounds occasionally and ten pounds frequently; ability to stand, walk, and sit each for six hours per eight-hour work day; frequently balance; occasionally climb stairs and ramps, stoop, kneel, crouch, and crawl; never climb ladders, ropes, and scaffolds; and avoid concentrated exposure to respiratory irritants (Tr. 47-48, 215-218). The vocational expert testified that such a person could perform work such as hand packager, sorter, assembler, and inspector, with 6,000 positions existing in the regional economy (Tr. 48). The vocational expert testified that if such a person must be permitted to sit or stand at will, 3,000 positions would exist in the regional economy (Tr. 48).

### DECISION OF THE ALJ

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since August 1, 2005, the alleged onset date.

9

3. The claimant has the following severe impairments: obesity, chronic obstructive pulmonary disease, emotional impairment, and sleep apnea.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform simple, routine and repetitive light work except that she must be able to sit or stand as necessary.

6. The claimant is unable to perform past relevant work.

7. The claimant was born July 5, 1971, and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has a limited education and she is able to communicate in English.

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10. Considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability as defined in the Social Security Act, from August 1, 2005 through the date of this decision.

(Tr. 10-18).

The Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 2-5). Therefore, the ALJ's decision stands as the Commissioner's final decision subject to judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

**STANDARD OF REVIEW**

If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Commissioner of Social Security, 375 F.3d 387 (6th Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Siterlet v. Secretary of Health and Human Services, 823 F.2d 918, 920 (6th Cir. 1987). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Secretary of Health and Human Services, 790 F.2d 450, 453 n.4 (6th Cir. 1986); and see Dorton v. Heckler, 789 F.2d 363, 367 (6th Cir. 1986) (holding that, in a close case, unless the Court is persuaded that the Secretary's findings are "legally insufficient," they should not be disturbed). The Court may not review the case de novo, resolve conflicts in evidence, or decide questions of credibility. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

## ANALYSIS

Plaintiff argues that the ALJ erred in finding that she retained the residual functional capacity to perform a range of light work, because the ALJ "ignored the objective evidence and failed to consider the entirety of Ms. Silver's impairments and limitations" [Doc. 12]. The plaintiff asserts that she established disabling pain and disabling physical limitations, along with disabling mental limitations.

The plaintiff also objects to the ALJ's finding that the plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely credible (Tr. 16).

The Commissioner asserts that substantial evidence supports the ALJ's residual functional capacity finding for light work. The Commissioner argues that this finding was consistent with the opinions rendered by four consulting and reviewing doctors, Dr. Desai, Dr. Scott, Dr. Page and Dr. Moore.

The plaintiff argues that the ALJ "ignored" and did not adopt state agency consultant Alice Garland's March 2007 opinion regarding plaintiff's mental limitations. However, the ALJ explicitly stated that Ms. Garland had reasonably concluded that plaintiff had moderate limitations for complex and detailed work and a moderate limitation in persistence and concentration (Tr. 16, referring to Tr. 381). The ALJ further found that Ms. Garland's opinion was consistent with the record (Tr. 16). The ALJ concluded, based on the evidence, including Ms. Garland's assessment, that given plaintiff's limitations, plaintiff could perform work that was simple, routine, and repetitive. The Court finds that this restriction adequately accounted for plaintiff's mental

12

limitations. The other state agency medical sources, Dr. Joslin and Dr. Carter agreed that the plaintiff did not have a severe impairment (Tr. 223, 398).

The plaintiff received no treatment from a mental health professional (Tr. 16). Dr. Kouser, the family practice physician, treated her with medication and found it to be effective (Tr. 325, 329, 331).

The Commissioner is correct that the jobs the ALJ found that plaintiff was capable of performing, specifically hand packager, sorter, assembler, and inspector, were entirely compatible with Ms. Garlan's opinion (Tr. 17). At the hearing, the ALJ asked the vocational expert what jobs could be performed by a person who had the ability to do a reduced range of light work, as described by Dr. Scott, which required simple, routine, and repetitive tasks (Tr. 47-48). The vocational expert testified that such a person could perform work as a hand packager, sorter, assembler, and inspector (Tr. 48). Plaintiff's representative asked the vocational expert whether there would be any jobs that such a person could perform if the restrictions identified by Ms. Garland were added, including a moderate limitation on the ability to concentrate and persist (Tr. 49-50). The vocational expert responded that it would not eliminate jobs (Tr. 50).

Plaintiff further argues that the ALJ erred in not including a limitation due to her sleep apnea. The Court finds, however, that the ALJ fully discussed the evidence concerning her sleep apnea and reasonably concluded that the condition was corrected with treatment (Tr. 16).

The Court finds that the ALJ also considered the evidence concerning plaintiff's back and extremity conditions and reasonably concluded that she had the capacity to perform light work with the option to sit or stand as necessary (Tr. 13). The medical record establishes that her back

13

conditions were generally mild, required little or no treatment, and did not restrict her from a range of light work (Tr. 194-195; 214-221; 363-375; 401-407). In addition, objective testing, such as MRI and x-ray, showed only mild abnormalities (Tr. 339-340; 447).

The Court also finds that the ALJ considered the evidence concerning plaintiff's COPD and reasonably concluded that she could perform a reduced range of light work (Tr. 13-16). Additionally, plaintiff's claims of debilitating COPD conflict with the fact that she continued to smoke cigarettes. A pulmonary function study showed only a moderate breathing restriction (Tr. 363-368; 373), and plaintiff's only treatment for breathing difficulties was inhaler medication (Tr. 315-332, 416-445, 453).

The ALJ found that plaintiff was obese based on height and weight measurements reported in plaintiff's medical records (Tr. 16). The examining and reviewing medical sources also all noted that plaintiff was obese (Tr. 194, 214, 373, 400), but her obesity produced no functional limitations (Tr. 373), and no opinion that it was disabling.

Plaintiff criticizes the ALJ's credibility assessment, but her arguments are insufficient to overcome the significant deference owed an ALJ's credibility finding. See Cruse v. Commissioner of Social Security, 502 F.3d 532, 542 (6th Cir. 2007) ("[A]n ALJ's credibility determinations about the claimant are to be given great weight. . .").

The ALJ reasonably relied on the vocational expert's testimony to conclude that plaintiff could perform a significant number of jobs, despite the limitations caused by her impairments. Substantial evidence in the record as a whole supports the ALJ's decision that plaintiff was not disabled.

14

Evidence Concerning Plaintiff's Treatment For Endometrioid Carcinoma Submitted To The

Appeals Council May Not Be Considered As Part Of The Substantial Evidence Review

The evidence which the plaintiff cites relative to endometrial cancer was submitted to the Appeals Council. The Appeals Council subsequently denied plaintiff's request for review (Tr. 2-6; 258-495). Therefore, the District Court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision. Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001).

Accordingly, I find that the ALJ properly reviewed and weighed all of the medical source opinions, the objective medical findings, and plaintiff's credibility to determine that she could perform a range of light work. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[1] that the plaintiff's Motion For Summary Judgment [Doc. 11] be **DENIED** and that the Commissioner's Motion For Summary Judgment [Doc. 15] be **GRANTED**.

Respectfully submitted,

   s/ H. Bruce Guyton
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).